277 So.2d 599 (1973)
Donald JONES, Natural Father, et al., Appellants,
v.
Otis W. ALLEN and His Wife, Edith D. Allen, Appellees.
No. 72-306.
District Court of Appeal of Florida, Second District.
May 18, 1973.
Britt Whitaker, Tampa, for appellants.
*600 R. Philip Haddock, Lakeland, for appellees.
LILES, Acting Chief Judge.
The maternal grandparents petitioned on August 10, 1971 to adopt their grandchild soon after the death of the mother. The child's parents had been divorced. The father was incarcerated at the time of the petition in the Florida State Penitentiary at Raiford. He was paroled on December 14, 1971. A condition of his parole, however, was that he was not to return to Polk County during his lifetime. Both the father and the paternal grandparents responded to the petition for adoption.
The adoption hearing was held in Polk County on March 2, 1972, after notice to the respondents. The father had apparently waited until too late to obtain permission to enter Polk County and be present at the hearing. However, his attorney, along with the paternal grandparents, appeared and opposed the petition as well as could be expected in view of the facts in the record. The circuit judge entered a final adoption order granting the petition of the maternal grandparents and also granting visitation rights in both the father and the paternal grandparents. The court's findings were that petitioners were
"suitable, fit and proper persons to adopt said child and that it is to the best interests and welfare of said child that they be permitted to adopt her and that said child is a suitable child for adoption . .. ."
The respondent father and paternal grandparents have appealed requesting another hearing wherein the father could be present and asserting that his inability to attend the hearing in March, 1972, constitutes a denial of due process. This proposition is not persuasive in view of the fact that two of the respondents were present and all the respondents were represented by counsel. It also appears that the father's presence would have added nothing to the proceeding nor that he was prejudiced in any substantial way. Certainly there was ample time in any event for him to have gotten permission to appear. The hearing was held some seven months from the date of the petition and nearly three months from the date of his parole. His failure to appear can only be described as being his own fault.
Appellants' second point relates to the sufficiency of the evidence upon which the adoption was granted. Although many states require a showing of a complete and total abandonment of a child by a natural parent for strangers to prevail over such parent in an adoption proceeding, Florida does not require such a stringent showing. See, 35 A.L.R.2d 662; In re Adoption by Cooper, 242 So.2d 196 (1st D.C.A.Fla. 1970); In re Adoption of Vincent, 219 So.2d 454 (1st D.C.A.Fla. 1969); In re Miller, 227 So.2d 73 (4th D.C.A.Fla. 1969). The foregoing citations plainly indicate that if strangers to the child can demonstrate by clear and convincing evidence that it is in the best interests of the child that the adoption take place and if the procedures of the adoption statute are followed to the letter there is no legal reason why strangers cannot prevail over natural parents.
We hasten to add, however, that the mere fact that strangers might make better parents or that they might be in a better financial position than the natural parents is not in and of itself sufficient even where it is manifestly clear that the child might be better off in the proposed new environment. Were these the only tests to be employed it would be quite possible for absolute strangers to arbitrarily choose any child of any parents poorer and/or less moral than themselves and, simply by following the procedures in the adoption statute, walk away with the child.
Of course, circuit judges are not likely to let this happen absent an additional showing that the natural parents have failed to carry out their parental duties to *601 the child in some substantial way and have neglected or shown disinterest in the welfare of the child. This is plainly as it should be as we perceive the law.
The record in this case indicates not only that it is in the best interest of the child to be in the household of her maternal grandparents as their daughter but also clearly shows substantial evidence of neglect, disinterest, and failure to carry out parental obligations with respect to this child by her father.
This, coupled with adherence to the adoption statute, Florida Statute Chapter 63, compels us to affirm the adoption order, except for the provision for visitation rights in the father and paternal grandparents. Florida Statute Section 63.151 F.S.A., reads as follows:
"After the adoption the natural parents, if living, are relieved of all legal duties and obligations due from them to the child and are divested of all rights with respect to the child ... ." (Emphasis added.)
We sympathize greatly with the considerations that no doubt lead Judge Stephenson to grant visitation rights in this case. Although the new parents are perfectly free to allow anyone they wish to visit their daughter we can find no legal authority for compelling them to do so once the final adoption is entered.
The compassion shown by the judge must give way to the new family union which the law has created. The severance by adoption must be complete and the law should expect the child to honor only her new mother and father.
Affirmed in part, reversed in part.
HOBSON and BOARDMAN, JJ., concur.