382 So.2d 78 (1980)
Alva RAMEY and Wanda L. Ramey, Appellants,
v.
Peter B. THOMAS and Alice M. Thomas, His Wife, Appellees.
No. KK-465/T1-4.
District Court of Appeal of Florida, Fifth District.
March 12, 1980.
Rehearing Denied April 11, 1980.
*79 Donald C. Jacobson, Daytona Beach, for appellants.
Isham W. Adams, Daytona Beach, for appellees.
SHARP, Judge.
The appellants appeal from an order denying their Motion to Vacate a Final Judgment of adoption of Hope Thomas. For the reasons stated in this opinion, the order is vacated and reversed, and this matter is remanded to the lower court with directions to conduct a full hearing concerning the adoption of this child, require formal notice to the appellants, and the consolidation of all of the various proceedings and reports concerning her.
*80 This case is a classic example of parties warring over a child to such an extent that the primary issue  the welfare and best interest of the child  got lost in the gunsmoke. In May of 1974, Hope Thomas lost her parents in an airplane crash. She was then only two years old and had been left in the care of her maternal grandparents, who often took care of her when her parents were traveling. An aunt, Marjorie Miller, and an uncle, Michael Thomas, the daughter and son respectively of the appellees, the paternal grandparents, picked Hope up for a visit with her paternal relatives at the time of the funeral. The paternal grandparents then refused to return the child to the maternal grandparents and denied them visitation with the child. The paternal grandfather filed a Petition for Appointment of himself as guardian of Hope Thomas, on May 13, 1974. The maternal grandparents seized the child and took her back to their home; and filed a counter-petition to be appointed her guardian. The paternal grandparents assured the maternal grandparents that both families would be able to spend an equal amount of time with their granddaughter, and all agreed to a court order appointing the paternal grandfather as guardian.
The battle escalated when the paternal grandparents failed to allow the maternal grandparents visitation with Hope and the paternal aunt, Marjorie Miller, petitioned to adopt her. The maternal grandparents counter-petitioned to adopt the child and sought visitation rights. The Division of Family Services did an investigative study and recommended against the adoption because the child needed and deserved a continuing, good relationship with both sets of grandparents. It also recommended that custody be given to the maternal grandparents because they had more capacity to promote meaningful and consistent relationships between the child and her other relatives than did the paternal grandparents. The lower court awarded custody of Hope to the paternal grandparents, but did order visitation for the maternal grandparents every other weekend; and it denied the petition to adopt. As a part of the judgment the court stated:
... it would appear reasonable that, prior to the initiation of any future adoption proceedings, that these parties confer and comprehensively discuss the best interests of the minor child unencumbered by the pendency or imminence of adversarial litigation. (Emphasis supplied).
The court's hope that the parties would concern themselves with Hope's "best interest" was dashed by the paternal grandparents' stingy observance of and denial of the court ordered visitation with Hope for appellants and by the appellants' equally wrongful flight in 1975 to another state with Hope. The maternal grandparents were arrested on July 3, 1977 and the child was returned to Florida, in the custody of the appellees. The state attorney did not prosecute the appellants and they also returned to live in Florida.
The final act in this sad drama began September 9, 1977 when the paternal grandparents filed a petition to adopt Hope Thomas. The proceeding was assigned to a different trial judge, and was given a different case number. The pleadings indicate no mention was made to the judge about the prior adoption proceedings, the existence of the maternal grandparents, or the prior Home Study Report filed by the Division of Family Services. No notice was given nor mention made to the maternal grandparents about the adoption proceeding. The Final Judgment of Adoption was entered on October 28, 1977. Upon learning of the adoption, the maternal grandparents filed motions to vacate the final judgment, and to consolidate the various cases and proceedings concerning Hope Thomas. Still another trial judge heard these motions and denied the relief requested. This appeal was then taken to this Court.
In an adoption proceeding, as well as any other kind of proceeding regarding the custody of a child, the primary issue is the best-interest and welfare of the child. Harden v. Thomas, 329 So.2d 389 (Fla. 1st DCA 1976); In re Adoption By Cooper, 242 So.2d 196 *81 (Fla. 1st DCA 1970); In re Vincent's Adoption, 219 So.2d 454 (Fla. 1st DCA 1969). Section 63.022 of the Florida Statutes (1979) provides:
(1) It is the intent of the legislature to protect and promote the well-being of persons being adopted .. .
(2) The basic safeguards intended to be provided by this act are that:
... (c) The required social studies are completed and the court considers the reports of these studies prior to judgment on adoption petitions . .
At the time the appellees filed their petition for the adoption of Hope Thomas, they and their attorney were well aware of the prior adoption proceedings, the Division of Family Services Report which recommended against any adoption of this child, and the trial court's order stating that all of the prior parties to the prior adoption proceeding should be consulted before any other proceedings were filed. As guardian of Hope Thomas, the paternal grandfather owed a fiduciary duty to reveal to the court all matters which might have a bearing on whether the adoption was in the child's best interest. The failure to disclose such material facts was tantamount to fraud.[1] See Reaves v. Hembree, 330 So.2d 747 (Fla. 1st DCA 1976); Harrell v. Branson, 344 So.2d 604 (Fla. 1st DCA 1977) cert. den 353 So.2d 675 (Fla. 1977).
We regret the necessity to observe that the attorney for the appellees was less than frank with the court in allowing the adoption to be handled essentially ex parte. He represented the child's interests as well as the appellee's, because the grandfather was Hope's legal guardian as well as adopting parent. An attorney is first an officer of the court, bound to serve the ends of justice with openness, candor, and fairness to all. This duty must be served even when it appears in conflict with a client's interests.[2] However, no compromise of the appellee's legal rights would have resulted from the attorney's candor and openness in this case. Rather, its absence created the necessity for more litigation and the continued disruption of Hope's life.
Had the trial court been informed about the prior adoption proceedings, the report of the Division of Family Services, and the interest and relationship of the maternal grandparents, it may well have taken various steps to insure that Hope's best interest and welfare were served: appoint a guardian ad litem to represent her, since the appellee-grandfather had assumed the role of a litigant;[3] require that notice of the adoption proceedings be given to the maternal grandparents,[4] pursuant to the court's prior judgment which entitled them to temporary custody of the child and consultation prior to the filing of a new adoption proceeding; and order a new report from the Department of Health and Rehabilitative Services,[5] in view of the prior adverse one. Here the lower court was deprived of essential information necessary to enable it to determine whether the proposed adoption was in the child's best interest.
The appellees urge that the appellants have no standing to attack this *82 adoption, since they were not parties thereto. The family relationship of grandparent to grandchild is significant and meaningful, even if it were not given legal recognition and status. Matter of Adoption of Noble, 349 So.2d 1215 (Fla. 4th DCA 1977). But the law of Florida recognizes substantial rights between grandparent and grandchild.[6] The adoption of Hope Thomas by appellees severs and cuts off any relationship with the appellants.[7] The appellants have a sufficient interest to seek equitable relief from the judgment of adoption, where such judgment was obtained through concealment of material facts.[8]
REVERSED AND REMANDED for proceedings consistent with this opinion.
DAUKSCH, C.J., concurs.
UPCHURCH, J., concurs specially with opinion.
UPCHURCH, Judge, specially concurring:
While I concur in all respects with Judge Sharp's opinion, this case illustrates a serious problem with our adoption statute. Section 63.122(4), Florida Statute (1977), requires notice of adoption be given only to:
4. (a) The [D]epartment or any agency placing the minor.
(b) The intermediary.
(c) Any person whose consent to the adoption is required by this act who has not consented unless such person's consent is excused by the court.
Although an investigation by the Department of Health and Rehabilitative Services is usually required, it is not required when the petitioner is a stepparent or when the child is related to one of the adoptive parents within the third degree.
It would be inconceivable to most normal grandparents to learn that they could be summarily denied access to their orphaned grandchild without receiving notice of any kind.
In the case before us, the child was the owner of a sizable personal estate. As a result of the adoption judgment, the paternal grandparents were accorded the right to inherit by intestacy from the child; on the other hand, the maternal grandparents were deprived of that right. The child also lost the right to inherit by intestacy from the maternal grandparents.[1] While I do not believe, and the record does not reflect, that this was a motivating factor in the litigation between these parties, it illustrates that substantial property rights may be lost without protection or notice to those affected. Whether the statute meets the requirements of due process as to those property rights is not a question before us at this time. U.S.Const. amend. XIV; Fla. Const. Art. 1, § 9. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In a case involving such property rights, the trial judge should anticipate a possible conflict between a petitioner's interest as a potential beneficiary and his duty as a guardian of the minor, and should act in the minor's best interest by appointing a guardian ad litem.[2]
In any case involving an orphaned minor, when the protection of the investigation of the Department of Health and Rehabilitative Services is not available, inquiry should be made by the court as to the whereabouts of the next of kin and consideration given to a requirement of notice to such person or persons. Such notice is required, in most instances, for the appointment of the *83 guardian of a minor or incompetent.[3] It is incongruous that there is no such requirement for an adoption in which the relationship and effects are permanent.
NOTES
[1] Although not directly applicable to adoption proceedings, Florida's new Uniform Child Custody Jurisdiction Act (Ch. 61.1302 et seq.) makes it clear that the public policy of this state requires parties seeking orders regarding the custody of a child, is to require them to fully disclose to the court making such a determination all prior custody proceedings concerning the child and the identity of all persons who have or claim any rights of custody or visitation with the child.
[2] Fla.Bar Code Prof.Resp., EC 8-5. Fraudulent, deceptive or otherwise illegal conduct by a participant in a proceeding before a tribunal or legislative body is inconsistent with fair administration of justice, and it should never be participated in or condoned by lawyers. Unless constrained by his obligation to preserve the confidence and secrets of his client, a lawyer should reveal to appropriate authorities any knowledge he may have of such improper conduct.
[3] § 744.391 Fla. Stat. (1979).
[4] § 62.062(2)(a) Fla. Stat. (1979).
[5] § 63.092(2) Fla. Stat. (1979).
[6] § 732.103 Fla. Stat. (1979) (inheritance) and § 61.13(2)(b) Fla. Stat. (1979) (visitation rights of grandparents in dissolution proceedings).
[7] § 63.172 Fla. Stat. (1979).
[8] Rule 1.540(b), Fla.Rules of Civil Procedure; Milgram v. Lee, 200 So.2d 238 (Fla. 3d DCA 1977). Appellants technically should have filed a new proceeding attaching the final judgment rather than a motion under Rule 1.540(b). However, this court will treat this proceeding as though it had been property filed, to avoid further delay and promote the best interests of the child.
[1] § 63.172, Florida Statutes (1977).
[2] § 744.391, Florida Statutes (1977).
[3] § 744.337, Fla. Stat. (1979).