NESBITT, Judge.
After a non-jury trial, the court entered final judgment denying a writ of garnishment served upon Southeast Bank by Ryder Truck Rental. We affirm.
Ryder obtained a judgment against one of Southeast’s customers, Sea Craft, Inc. *303 Attempting to satisfy the judgment, Ryder sought garnishment of Sea Craft’s accounts at Southeast by writ served on May 23, 1980. Southeast’s answer, served on May 27, 1980, stated that Sea Craft’s accounts had a balance of zero dollars. It was subsequently learned that Southeast’s records reflected a balance in a Sea Craft account of $2,069.53 at the time of the garnishment. It was also learned that a check for more than $15,000 drawn on Southeast by Bar-clays Bank was presented for deposit in Sea Craft’s account on May 22, 1980, the day before the writ of garnishment was served.
At trial, Southeast demonstrated by competent, substantial evidence that the reflected balance of $2,069.53 was due to a bank error crediting to Sea Craft’s account a check for over $1,000 which should have been debited to that account. The result was an overdrawn account. Southeast also showed by sufficient evidence that the check drawn on Barclays’ account at Southeast was returned to Sea Craft on May 23, 1980 for lack of an endorsement and that this check was not redeposited until May 27, 1980, the day the writ was answered.
Despite the evidence presented at trial, Ryder maintains that Southeast is liable for the balance of $2,069.53 because its ownership records demonstrated the presence of that amount in Sea Craft’s account. For this proposition, it relies on a 1971 amendment which incorporated into the garnishment law a specific provision relating to banks as garnishees. See Ch. 71-69, § 1, Laws of Fla. The provision, codified as Section 77.06(2), Florida Statutes (1979), requires a garnishee bank to report in its answer and retain any deposit, account or tangible or intangible personal property in its possession or control, if the deposit or ownership records of the bank reflect that the judgment debtor has or appears to have an ownership interest therein.
We do not read Section 77.06(2) as imposing liability upon a garnishee bank for whatever sum is reflected in its records. Where, as here, the bank’s records are later shown to be erroneous, such an interpretation would dictate an absurd result; to wit: if the account balance is overstated, an innocent third party must assume part of the judgment debt of the original defendant; and if the balance is understated, the garnishor is prevented from garnishing sums to which it would normally be entitled. A statutory interpretation that achieves an absurd or illogical result will not be adopted. McKibben v. Mallory, 293 So.2d 48 (1974); Sagaert v. State of Florida, Department of Labor and Employment Security Unemployment Appeals Commission, 418 So.2d 1228 (Fla. 3d DCA 1982); Good Samaritan Hospital Association v. Simon, 370 So.2d 1174 (Fla. 4th DCA 1979).
More importantly, Section 77.06(2) makes absolutely no reference to liability. It merely describes a bank’s procedural responsibilities when served with a writ of garnishment. Section 77.06(1) governs the liability of garnishees. It provides:
Service of the writ shall make garnishee liable for all debts due by him to defendant and for any tangible or intangible personal property of defendant in his possession or control at the time of the service of the writ or at any time between the service and the time of his answer.
Obviously, an overstatement in a ledger balance does not create a debt between the bank and its customer for the amount of the overstatement. Nor does the error confer upon the bank possession or control of any tangible or intangible personal property. Thus, no liability is established by the erroneous overstatement. Since Southeast had no liability for the $2,069.53, the fact that it may have answered the writ in bad faith is irrelevant.
With respect to the $15,000 cheek, Ryder asserts that it was an item of personal property within the possession or control of the bank. However, the evidence showed only that the writ of garnishment was served on the bank the same day the check was mailed back to Sea Craft for endorsement and that the check was returned to the bank the same day the writ was answered. There was no evidence that *304 the writ was received before the check was mailed out on May 23, or that the check was redeposited before the answer to the writ was sent out on May 27. It was Ryder’s burden to prove that Southeast had the check in its possession or control, either at the time of service of the writ, at the time of service of the answer or at some time in between. Reeves v. Don L. Tullis & Associates, Inc., 305 So.2d 813 (Fla. 1st DCA 1975). Ryder failed to carry this burden and thus did not prove Southeast’s liability for the check.[1]
The trial court’s judgment was supported by competent, substantial evidence and, therefore, must be affirmed. Southern Convalescent Home v. Wilson, 285 So.2d 404 (Fla.1973); Atkins v. Keller, 400 So.2d 168 (Fla. 3d DCA), pet. for review denied, 411 So.2d 380 (Fla.1981).
Affirmed.

. In light of the failure of proof concerning the presence of the check at the bank during the garnishment period, we expressly decline the parties’ invitation to decide whether the bank was required to collect the funds from Bar-clays’ account before becoming liable in garnishment for the check.