512 So.2d 1088 (1987)
Eugene BEARD and Ann Beard, Appellants,
v.
Paul HAMILTON and Sharon Hamilton, Appellees.
No. 86-3015.
District Court of Appeal of Florida, Second District.
September 16, 1987.
*1089 Richard D. Mars, Bartow, for appellants.
No appearance for appellees.
PER CURIAM.
Ann and Eugene Beard appeal the order of the trial court dismissing their motion for visitation with their grandchild. Appellants' daughter died and their son-in-law, Paul Hamilton, the father, remarried. The stepmother, Sharon Hamilton, adopted the child on April 30, 1984, at which time the grandparents had no court-ordered visitation rights. However, the grandparents did have at the time of the adoption a motion for visitation pending since May, 1983. Apparently no notice of the adoption proceedings was provided to the grandparents. This adoption was overturned by a subsequent order of the trial court apparently to give the grandparents a chance to establish a right to visitation. But the adoption was reinstated by our decision in Hamilton v. Beard, 490 So.2d 1297 (Fla. 2d DCA 1986).[1]
Following the initial order of adoption, the grandparents' first petition for visitation rights was granted by order dated September 17, 1984. But this order was orally vacated by the trial court on October 5, 1984, which order was reduced to writing on November 16, 1984. In this order, the court concluded that the grandparents "lost standing to petition the court for grandparent visitation pursuant to Florida Statutes Chapter 63.172" and that the order granting the visitation rights was therefore voidable. In view of the statutory scheme regarding grandparent visitation *1090 rights, this was error. No appeal was taken by the grandparents from this first order. Rather, the grandparents filed a new motion for visitation on October 5, 1984. This second motion, heard by a different trial judge, was dismissed and it is from this dismissal that the grandparents appeal. The appellees have neither made an appearance in this case nor provided us with briefs. We reverse.
Section 63.172, Florida Statutes (1985), provides that "a judgment of adoption ... terminates all legal relationships between the adopted person and his relatives ... so that the adopted person thereafter is a stranger to his former relatives for all purposes... ."
On October 1, 1984, chapter 752, Florida Statutes (Supp. 1984), which creates a procedure for grandparents to establish visitation rights, became effective. The grandparents' second motion for visitation, filed on October 5, 1984, was eventually dismissed because, as the first trial court concluded, the November 16, 1984 order was "controlling in that the court lost jurisdiction when the adoption was entered, and the order of September 17, 1984 [granting visitation rights] was void from its inception." The grandparents properly filed a new motion for visitation to assert their rights established by chapter 752, Florida Statutes, rather than appeal the prior order denying them visitation.
Although section 63.172(1)(b) is written in absolute terms, we perceive an ambiguity in that statute regarding whether it applies to the status of grandparents where one of the natural parents retains custody of the child. See Ramey v. Thomas, 483 So.2d 747 (Fla. 5th DCA 1986). Ramey involved a dispute between the maternal and paternal grandparents over which of the two parties should be permitted to adopt the minor grandchild, orphaned by the deaths of her mother and father. The paternal grandparents' petition for adoption was granted and the maternal grandparents appealed. The Fifth District noted in that case that a tragic effect of the adoption would be to sever the child's relationship with her maternal grandparents by operation of section 63.172 and the failure of section 752.01(2) to provide for grandparental visitation rights where the child is adopted by one other than a stepparent. The court noted further that section 63.172 is "[s]omewhat ambiguous regarding maintaining the status of grandparents through a natural parent in the context of stepparent adoptions... ." Ramey at 748 n. 1. Section 63.172 seeks to assure that the severance of family ties by adoption be complete so as to protect the "new family union which the law has created." Jones v. Allen, 277 So.2d 599 (Fla. 2d DCA 1973). But where one of the natural parents is married to the adopting stepparent, the need for such an utter severance of family ties between the grandparents and the grandchild is lacking. The legislature recognized this when it enacted section 752.07. The enactment of chapter 752 was meant to remedy, in part, the failure of chapter 63 to adequately protect the familial bonds between grandparents, whether related by blood to the natural parent or not, and their grandchildren in the context of stepparent adoptions.[2]
Chapter 752 abrogates the absolute terms of section 63.172 by providing for the survival of a grandparent's rights to visitation where the stepparent adopts the minor child. Section 752.07 provides in part that "[w]hen there is a remarriage of one of the natural parents of a minor child for whom visitation rights have been granted to a grandparent pursuant to s. 752.01, any subsequent *1091 adoption by the stepparent will not terminate any grandparental rights." Section 752.01 provides in part that courts may order grandparent visitation where one of the parents of the child is deceased. Although the grandparents in this case did not have an order providing for visitation rights at the time the adoption by the stepparent occurred, there was a motion for visitation pending since May, 1983, before the adoption became final. And in construing section 752.07 we cannot conceive that the legislature intended to permit grandparents to have visitation rights where a visitation order was entered prior to the adoption proceeding but not permit grandparents to file for such rights after the adoption procedure is completed.
We believe it is significant that the trial judge noted in the order now before us for review that "there is no compelling reason not to have grandparent visitation in [this] ... case. It is obvious that the grandparents love the child of their deceased daughter... . It appears that respondents ... have, by manipulation of the court system, ... successfully precluded the grandparents from having visitation with their grandchild." But for what the trial court characterized in this order as the appellees' "manipulation of the court system," apparently referring to the successful attempts of the appellees to hide from the grandparents, the appellees' petition for adoption, the trial court "would have awarded the grandparents visitation."
Under the facts of this case, we believe that neither the legislative intent of chapter 752 nor notions of fairness would be served by affirming the order that dismissed the grandparents' motion for visitation rights. Rather, we believe that section 752.07 is designed to protect orders granting visitation rights under section 752.01 from the legal effects, if any, of a subsequent adoption by the stepparent. See, e.g., Lee v. Kepler, 197 So.2d 570 (Fla. 3d DCA 1967) (case decided before enactment of chapter 752, wherein the court held that adoption by stepparent vitiates court-ordered visitation rights of grandparent). Section 752.07 provides clearly that grandparental visitation rights cannot be terminated by a stepparent adoption. Further, we believe that the presence of a pre-existing order of visitation is not required to gain such rights. In order to avoid the successful invocation of the law to perpetrate an unfair result in this case, we reverse and remand for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and FRANK, J., and BOARDMAN, EDWARD F., (Ret.) J., concur.
NOTES
[1] Our prior opinion dealt with the trial court's decision to overturn the adoption. The visitation issue, as we said in that previous opinion, involved a separate proceeding. Therefore, our prior opinion is not controlling as to the visitation issue now before us.
[2] We emphasize that chapter 752 does not provide an avenue for grandparents of a minor child to acquire visitation rights where the child has been placed for adoption under chapter 63. § 752.01(2), Fla. Stat. (1985). Section 752.01(2), Florida Statutes (1985), states that "[t]his act does not provide for grandparental visitation rights for children placed for adoption under chapter 63 except as provided in s. 752.07 with respect to adoption by a stepparent." In this case the minor child was not placed for adoption under chapter 63 as the term is defined in section 63.032(9), Florida Statutes (1985). Placement means the process of giving or transferring of possession or custody to another person for adoption. Here, the father did not surrender custody of his child.